**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

– – – – – – – – – – – – – – – – – – – – – – – – – –X

DAVID W. SMITH, II                                    :
3820 Offutt Road
Randallstown, Maryland 21133                          :
(Baltimore County)
                                                      :

                        *Plaintiff,*                  :

                v.                                    :          **COMPLAINT FOR
                                                                 COPYRIGHT
                                                      :          INFRINGEMENT
JOSEPH ANTONIO CARTAGENA                                         JURY TRIAL DEMANDED**
(p/k/a "Fat Joe")                                     :
215 Aqua Ter.
Miami Beach, FL 33141                                 :
                                                                 Case No.: _____
                                                      :

CURTIS JAMES JACKSON, III                             :
(p/k/a "50 Cent")
21731 Ventura Blvd., #300                             :
Woodland Hills, CA 91364
                                                      :

SCOTT STORCH                                          :
20540 Ventura Blvd., # 212
Woodland Hills, CA 91364                              :

                                                      :

REMINISCE SMITH MACKIE                                :
(p/k/a "Remy Ma")
220 Keenan Ct.                                        :
River Vale, NJ 07675
                                                      :

WARNER/CHAPPELL MUSIC, INC.                           :
Serve On: Corporation Trust Co.
Corporation Trust Center                              :
1209 Orange St.
Wilmington, DE 19801                                  :

                                                      :

                                                      :

KELLY│DORSEY, P.C.

10320 Little Patuxent Pkwy., Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 • Fax: (443) 542-0069
www.kellydorseylaw.com

1

WARNER-TAMERLANE PUBLISHING CORP.
Serve On: Corporation Trust Co.                      :
Corporation Trust Center
1209 Orange St.                                       :
Wilmington, DE 19801

                                                      :

TVT MUSIC, INC.                                       :
Serve On: Steve Gottlieb
23 E. 4 St., 3rd Fl.                                  :
New York, NY 10003

                                                      :

JOEY AND RYAN MUSIC                                   :
Serve On: Corporation Service Co.
1201 Hays St.                                         :
Tallahassee, FL 32301

                                                      :

REMYNISCE MUSIC                                       :
Serve On: 156 W. 56 St., 4th Fl.
New York, NY 10019                                    :

                                                      :

TERROR SQUAD PRODUCTIONS, INC
Serve On: Thomas I. Mandelbaum, Esq.                  :
353 Lexington Ave. – PH
New York, NY 10016                                    :

                                                      :

TERROR SQUAD ENTERTAINMENT
Serve On: Thomas I. Mandelbaum, Esq.                  :
353 Lexington Ave. – PH
New York, NY 10016                                    :

                                                      :

50 CENT MUSIC, LLC
Serve On: United Corp. Services, Inc.                 :
10 Bank St., Ste. 560
White Plains, NY 10606                                :

                                                      :

SHADY RECORDS, INC.
Serve On: EResidentAgent, Inc.                        :
99 Washington Ave., Ste. 805 A
Albany, NY 12210                                      :

2

INTERSCOPE RECORDS                                              :
Serve On: Universal Music Group, Inc.
c/o The Corporation Trust Company                               :
Corporation Trust Center
1209 Orange St.                                                 :
Wilmington, DE 19801
                                                                :

AFTERMATH ENTERTAINMENT Serve On:                               :
Universal Music Group, Inc.
c/o The Corporation Trust Company                               :
Corporation Trust Center
1209 Orange St.                                                 :
Wilmington, DE 19801
                                                                :
And
                                                                :
DOES 1 THROUGH 10
                                                                :
                                              *Defendants*.     :
– – – – – – – – – – – – – – – – – – – – – – – –X

## COMPLAINT

Plaintiff David W. Smith, II ("Plaintiff"), by and through his attorneys, Gregory A. Dorsey,

Esquire, and the law firm of Kelly Dorsey, P.C., for its Complaint against Defendants Joseph

Antonio Cartagena ("**Defendant Cartagena**"), Curtis James Jackson, III ("**Defendant Jackson**"),

Scott Spencer Storch ("**Defendant Storch**"), Reminisce Smith Mackie ("**Defendant Mackie**"),

Warner/Chappell Music Group, Warner-Tamerlane Publishing Corp., TVT Music, Inc., Joe and

Ryan Music, Remynisce Music, Terror Squad Productions, Inc., Terror Squad Entertainment, 50

Cent Music, LLC, Shady Records, Inc., Interscope Records, Aftermath Records, and Does 1

through 10, alleges, on knowledge as to his own actions, and otherwise on information and belief,

as follows:

3

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action seeking injunctive and monetary relief for Defendants' intentional infringement of Plaintiff's copyright in Plaintiff's musical composition titled "WHACHACOM4?" and "WHACHACOM4? B/W EXTRA GULLY SINGLES" (the "Copyrighted Work").

2.      The Copyrighted Work has been registered with the United States Copyright Office; such registrations issued on April 22, 2022.

3.      Plaintiff, age 52, is a decades-long music creator, producer, and publisher in the Rap and Hip Hop genres of music. Plaintiff currently holds copyright registrations on numerous songs, a publishing catalogue that includes over thirty (30) works of art, and is a voting member of the National Academy of Recording Arts and Sciences, which presents the Grammy Awards.

4.      In or around early 2003, Plaintiff created the Copyrighted Work. As a result, Plaintiff is the joint owner of all copyright rights in the Copyrighted Work. Since creation of the Copyrighted Work, Plaintiff has published, distributed, advertised, and publicly displayed copies of the Copyrighted Work in the United States by, among other things, distributing the Copyrighted Work to music pools and disc jockeys to play in nightclubs and other events such as weddings and festivals, and on the radio throughout the Eastern Seaboard. By way of example, and not of limitation, Plaintiff distributed approximately 600 or more units of the Copyrighted Work to music pools in the New York City area for promotion with each pool having between 50 and 100 member disc jockeys.

5.      One such record pool, the renowned Spinners Unlimited Record Pool ("S.U.R.E.") in New York City, reported the Copyrighted Work as number 2 on its "Top Upward Slizzers

KELLY DORSEY, P.C.

10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

(Prime Movers)" chart of August 5, 2003, and one of five on its "New & Hot S.U.R.E. Shots" chart.  As shown below, the Copyrighted Work experienced much success.

6.     All of the claims asserted herein arise out of and are based on Defendants' violation of Plaintiff's rights to reproduce, distribute, make derivative works, publicly display, and publicly perform the Copyrighted Work and Defendants' sale of products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work without Plaintiff's consent. Plaintiff brings this action for copyright infringement under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 *et seq.*

7.     Plaintiff seeks all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiff's damages and Defendants' profits from Defendants' willfully infringing conduct, and other monetary relief.

## JURISDICTION AND VENUE

8.     This court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331, 1332(a) and 1338(a).

9.     This court has specific personal jurisdiction over all Defendants, because Defendants purposefully availed themselves to this court's jurisdiction when they directed sales of the infringing works to this District, promoted sales of recordings of the infringing works in this District, caused and promoted live performances of the infringing works in this District, and caused the infringing works to be performed and recordings of the infringing works to be played by, *inter alia*, radio stations in this District.

10.     This Court further has specific personal jurisdiction over Defendants Cartagena, Jackson, and Mackie, because Defendants purposefully availed themselves to this Court's

jurisdiction when they performed the infringing works in this District and promoted those performances and sales of the infringing works in this District.

11.     Venue is proper in this District under 28 U.S.C. § 1400(a) because Defendants may be found in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(3), because Defendants are subject to personal jurisdiction in this District regarding this action, and there is no other District in which the action may otherwise be brought.

## PARTIES

12.     Plaintiff is an individual who resides in Randallstown, Maryland. Plaintiff is a citizen of Maryland. As the second cousin of world famous Jazz guitarist George Benson and son of a drummer and songwriter for a Pittsburgh-based Rhythm & Blues group in the 1960's, Plaintiff has been around the music industry his entire life. At the age of 15, he became actively involved in the recording and distribution of rap music throughout the city of Pittsburgh. At the age of 16, Plaintiff co-founded his own record label through which he released songs in Pittsburgh from 1986 through 1993. In 1994, Plaintiff relocated to Maryland where he started a career in technology that spanned 22 years. In an effort to continue to cultivate his musical interests in parallel with other career ambitions, in 2000 Plaintiff founded his own independent record label that became known as Blacksmith Entertainment, where he focused on producing records as a musician.

13.     On information and belief, Defendant Cartagena is an individual doing business in and with the residents of the state of Maryland. Defendant Cartagena is known professionally by his stage name "**Fat Joe**" and is a decades-long music creator, producer, and publisher in the Rap and Hip Hop genres of music. Defendant Cartagena claims to have co-authored the Cartagena Infringing Work with Defendant Mackie and Defendant Storch, and all three are listed as authors of the Cartagena Infringing Work on its copyright registration

14.     On information and belief, Defendant Jackson is an individual doing business in and with the residents of the state of Maryland. Defendant Jackson is known professionally by his stage name "**50 Cent**" and is a decades-long music creator, producer, and publisher in the Rap and Hip Hop genres of music.

15.     On information and belief, Defendant Storch is an individual doing business in and with the residents of the state of Maryland. Defendant Storch is a decades-long record producer in the Rap and Hip Hop genres of music. Defendant Storch claims to have co-authored the Cartagena Infringing Work with Defendant Cartagena and Defendant Mackie, and all three are listed as authors of the Cartagena Infringing Work on its copyright registration. Defendant Storch further claims to have co-authored the Jackson Infringing work with

16.     On information and belief, Defendant Reminisce Smith Mackie is an individual doing business in and with the residents of the state of Maryland. Defendant Mackie is known professionally by her stage name "**Remy Ma**" and is a decades-long music creator, producer, and performer in the Rap and Hip Hop genres of music. Defendant Mackie claims to have co-authored the Cartagena Infringing Work with Defendant Cartagena and Defendant Storch, and all three are listed as authors of the Cartagena Infringing Work on its copyright registration.

17.      Warner/Chappell Music is a corporation that is incorporated in the state of Delaware and has its principal place of business in Los Angeles, California. Warner Chappell Music is the parent entity of Warner-Tamerlane Publishing Corporation, who along with other Defendants owns the copyright for the Cartagena Infringing Work.

18.     Defendant Warner-Tamerlane Publishing Corporation is a corporation that is incorporated in the state of Delaware and has its principal place of business in **Los Angeles, CA**. Defendant, along with other Defendants, owns the copyright for the Cartagena Infringing Work.

19.     Defendant Remynisce Music is a corporation that is incorporated in the state of New York and has its principal place of business in New York, New York. Pursuant to New York law, Defendant Remynisce Music was dissolved by proclamation on October 26, 2011, for failure to file or pay taxes for the previous two years. Defendant Remynisce Music, along with other Defendants, owns the copyright for the Cartagena Infringing Work.

20.     Defendant Joey and Ryan Music is a corporation that is incorporated in the state of Florida and has its principal place of business in Miami, Florida. Defendant Joey and Ryan Music, along with other Defendants, owns the copyright for the Cartagena Infringing Work

21.     On information and belief, Defendant Terror Squad Productions, Inc. is a corporation that is incorporated in the state of New York and has its principal place of business in New York, New York. Defendant Terror Squad Productions, along with other Defendants, owns the copyright for the Cartagena Infringing Work

22.     On information and belief, Defendant Terror Squad Entertainment is a corporation that is incorporated in the state of New York and has its principal place of business in New York, New York. On information and belief, Defendant Terror Squad Entertainment, along with other Defendants, owns the copyright for the Cartagena Infringing Work.

23.     Defendant TVT Music, Inc. is a corporation that is incorporated in the state of New York and has its principal place of business in New York, NY. Defendant TVT Music, along with other Defendants, owns the copyright for the Cartagena Infringing Work and the copyright for the Jackson Infringing Work.

24.     Defendant 50 Cent Music, LLC, is a limited liability company formed under the laws of the state of New York and has its principal place of business in New York, NY. Defendant

50 Cent Music, LLC, along with other Defendants, owns the copyright for the Jackson Infringing Work.

25.     Defendant Shady Records, Inc., is a corporation that is incorporated in the state of New York and has its principal place of business in New York, NY. Defendant Shady Records, along with other Defendants, owns the copyright for the Jackson Infringing Work.

26.     Defendant Aftermath Records is a subsidiary of Universal Music Group, Inc., a corporation that is incorporated in the state of Delaware and has its principal place of business in California. Defendant Aftermath, along with other Defendants, owns the copyright for the Jackson Infringing Work.

27.     Defendant Interscope Records is a subsidiary of Universal Music Group, Inc., a corporation that is incorporated in the state of Delaware and has its principal place of business in California. Defendant Interscope Records, along with the other Defendants, owns the copyright for the Jackson Infringing Work.

28.     All Defendants have exploited Plaintiff's copyrighted work in this District by directing sales of the Cartagena Infringing Work and the Jackson Infringing Work to this District, performing and promoting the Cartagena Infringing Work and the Jackson Infringing Work in this District, and receiving significant revenue and royalties from sales and performances of the Cartagena Infringing Work and the Jackson Infringing Work in this District.

29.     Plaintiff is informed and believes and thereon alleges that Defendants Does 1 through 10, inclusive, are other parties not yet identified who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants Does 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore

KELLY|DORSEY, P.C.

10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when their true names have been ascertained.

30.     As alleged herein, "Defendants" shall mean all named Defendants and all fictitiously named Defendants.

31.     Plaintiff is informed and believes and on that basis alleges that Defendants at all times relevant to this action, were the agents, servants, partners, joint venturers and employees of each of the other Defendants and in doing the acts alleged herein were acting with the knowledge and consent of each of the other Defendants in this action. Alternatively, at all times mention herein, each of the Defendants conspired with each other to commit the wrongful acts complained of herein. Although not all of the Defendants committed all of the acts of the conspiracy or were members of the conspiracy at all times during its existence, each Defendant knowingly performed one or more acts in direct furtherance of the objectives of the conspiracy. Therefore, each Defendant is liable for the acts of all of the other conspirators.

**FACTS COMMON TO ALL COUNTS**

A.     <u>Plaintiff and his Copyrighted Work</u>

32.     On May 22, 2002, Plaintiff formed the Maryland-based entity I3 Entertainment, LLC as an independent record label and subsequently changed its name to Blacksmith Entertainment, LLC ("**Blacksmith**").

33.     Plaintiff authored the music in the Copyrighted Work in or about 2002. Plaintiff subsequently collaborated with an individual named Molik S. Hippolyte ("Molik"), a rapper who performed under the name "Moe Wet," who authored the words and lyrics in the Copyrighted Work. In January 2003, Plaintiff and Molik recorded the Copyrighted Work on Plaintiff's digital audio workstation. Plaintiff first published the Copyrighted Work on April 22, 2003.

34.     Plaintiff and Molik agreed that Blacksmith could publish and distribute the Copyrighted Work as their record label.

35.     The Copyrighted Work is wholly original, and Plaintiff is a joint owner of all rights, title, and interest in and to the Copyrighted Work, including all rights under copyright laws.

36.     Plaintiff is a joint owner of United States Copyright Registration No. PA0002373683 for the Copyrighted Work, issued by the United States Copyright Office on August 24, 2022. Attached as **Exhibit 1** is a true and correct copy of the registration certificate for Plaintiff's Registration No. PA0002373683.

37.     Plaintiff is a joint owner of United States Copyright Registration No. SR0000953169 for the Copyrighted Work, issued by the United States Copyright Office on August 24, 2022. Attached as **Exhibit 2** is a true and correct copy of a print out from the Copyright Office's catalog for Plaintiff's Registration No. SR0000953169. With his application, Plaintiff submitted two copies of the original vinyl records containing the Copyrighted Work. A true and correct photograph of  the record, as submitted as the deposit to the United States Copyright Office is attached hereto as **Exhibit 3**.

38.     Plaintiff, directly and through Blacksmith, published, distributed, and displayed the Copyrighted Work by, among other things, in or around June 2003, pressing at least 600 12" vinyl copies of the Copyrighted Work then distributing the Copyrighted Work to record pools and disc jockeys throughout the Eastern Seaboard, including, record pools and disc jockeys in New York, New Jersey, Philadelphia, Maryland, Washington DC, and Northern Virginia. All public depictions of the Copyrighted Work are accompanied by an appropriate copyright notice indicating "Blacksmith" is the owner of all rights in the work.

11

39.     The publication, distribution, and performance of the Copyrighted Work was a tremendous success:

- In the "Franchise Record Pool" weekly feedback sheet for June 27, 2003, the Copyrighted Work appeared as one of the eight pickups in pickup #318.

- In Volume 16, Issue 13 of the Spinners Hot Sheet, "Philadelphia's Leading Dance Music Tip Sheet" for the week of July 1-15, 2003, the Copyrighted Work appeared as number 47 on the "Philly Spinners Urban Buzz 50".

- In Volume 16, Issue 15 of the Spinners Hot Sheet, Philadelphia's Leading Dance Music Tip Sheet" for the week of August 1-15, 2003, the Copyrighted Work appeared as number 16 on the "Rap Chart" of the "Specific Audience Charts" and number 40 on the "Philly Spinners Urban Buzz 50".

- On the renowned S.U.R.E. NYC "WEEKLY E-MAIL PUBLICATION ALERTING THE MUSIC INDUSTRY TO THE MUSIC, NEWS & ISSUES THAT MADE AN IMPACT ON THE URBAN STREETS OF THE BIG APPLE OVER THE WEEKEND!" dated August 5, 2003, the Copyrighted Work was third on the list of five on the "New & Hot S.U.R.E. Shots!" chart and second on the list of twenty-five on the "Top Upward $lizzer$ (Prime Movers)" chart.

- The Washington DC based OMAP (Our Mid Atlantic Pool) Top 50 Urban chart for August 10-23, 2002 shows the Copyrighted Work debuted on its chart at number 50 in July 2003 and moved to number 45 within 2 weeks.

- In Volume 16, Issue 17 of the Spinners Hot Sheet, Philadelphia's Leading Dance Music Tip Sheet" for the week of September 1-15, 2003, the Copyrighted Work appeared as number 10 on the "Rap Chart" of the "Specific Audience Charts" and number 25 on the "Philly Spinners Urban Buzz 50".

- In Volume 16, Issue 19 of the Spinners Hot Sheet, "Philadelphia's Leading Dance Music Tip Sheet" for the week of October 1-15, 2003, the Copyrighted Work appeared as number 4 on the "Rap Chart" of the "Specific Audience Charts".

- In Volume 16, Issue 21 of the Spinners Hot Sheet, "Philadelphia's Leading Dance Music Tip Sheet" for the week of November 1-15, 2003, the Copyrighted Work appeared as number 2 on the "Rap Chart" of the "Specific Audience Charts".

KELLY DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

40.     The Copyrighted Work was widely and publicly performed in this District and throughout New York, New Jersey, Philadelphia, Washington DC, and Northern Virginia by means of records and other media.

41.     The Copyrighted Work appeared on charts alongside songs performed by major artists at the time and published by major record labels, including the Defendants.

42.     Defendants had a repeated and continuing reasonable possibility of access to the Copyrighted Work in various ways including the aforementioned public performances, records, and other media. Without limiting the access and knowledge of other Defendants, Plaintiff is informed and believes and thereon alleges that, at all relevant times, Defendant Cartagena, Defendant Jackson, Defendant Mackie and Defendant Storch were specifically aware of the Copyrighted Work because, among other things, (i) Plaintiff's record label and Defendant Cartagena's record label both did business with S.U.R.E. NYC record pool and each received weekly communications as to the performance of releases on their respective label; (ii) the music Defendant Cartagena performed and published at the time targeted the same audience as Plaintiff's Copyrighted Work; (iii) the music Defendant Jackson performed and published at the time targeted the same audience as Plaintiff's Copyrighted Work; (iv) the music Defendant Mackie performed and published at the time targeted the same audience as Plaintiff's Copyrighted Work, (v) Defendant Cartagena, Defendant Mackie, and Defendant Jackson were enmeshed in the underground and aboveground music scene of New York city in which the Copyrighted Work was played and performed; and (vi) Defendant Storch produced both the Cartagena Infringing Work (defined below) and the Jackson Infringing Work (defined below).

B.      Defendants' Infringing Conduct

KELLY DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

43.     Defendants, and each of them, by way of the conduct set forth herein, infringed Plaintiff's rights in both the musical composition and sound of the Copyrighted Work. This infringement includes, without limitation, Defendants', and each of their, violation of Plaintiff's exclusive rights, as set forth in 17 U.S. Code § 106, in and to the Copyrighted Work.

44.     On information and belief, Defendant Cartagena, age 52, is from the Bronx borough of New York City. He entered upon the New York rap music scene between the late 1980s and early 1990s. In or around 1993, Defendant Cartagena established the record company Terror Squad Productions. Defendant Cartagena first experienced success with the single "Flow Joe" off his second album, *Represent*, and later achieved mainstream popularity with his fourth album, *Jealous Ones Still Envy (J.O.S.E.)*, which was certified platinum by the Record Industry Association of America ("RIAA"). Defendant Cartagena also formed the hip hop collective Terror Squad, which debuted as a group on Defendant Cartagena's first studio album, *Don Cartagena*. In 1998, Terror Squad produced a critically acclaimed but commercially unsuccessful album, *Terror Squad: The Album*, before going on a hiatus from 2000 to 2004 after the death of one of their members, Big Pun. Terror Squad reunited in 2004 to release the album, *True Story*, which features the Cartagena Infringing Work.

45.     On information and belief, Defendant Jackson, age 47, is from Queens, New York. He entered upon the New York rap music scene in the late 1990s. He was "discovered" by rapper Eminem and producer Dr. Dre in 2002, and they produced and released 50 Cent's first major album *Get Rich or Die Tryin'* in 2003. That album included "In da Club," which was hugely successful, spending several weeks at "number one" on the Billboard charts, including the Billboard Hot 100 chart. *Get Rich or Die Tryin'* was certified as 9x platinum by the RIAA. In 2005, Defendant Jackson produced his second major album, *The Massacre*, which features the Jackson Infringing

KELLY|DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 • Fax: (443) 542-0069
www.kellydorseylaw.com

Work. Defendant Jackson went on to release three more commercially successful albums: *Bulletproof*, *Curtis*, and *Before I Self Destruct*, before parting ways with Interscope Records in or around 2009. Defendant Jackson has since produced and starred in a hit television show, *Power*, which aired from 2013 to 2020, as well as being known for a variety of diverse investments in various consumer products.

46.     As Defendant Cartagena describes the music scene of the early 2000s in his memoir *The Book of Jose*: "If it was hot in the streets, the radio and clubs would flock to it and *you had a hit*."[1] (emphasis added).

47.     As Defendant Cartagena describes Defendant Jackson's foray onto the music scene:

> In the early 2000s, [Defendant Jackson] . . . turned the entire mixtape industry upside down by making their own hybrid underground releases. You have to give it to [Defendant Jackson]. He was a visionary and he came along and mastered the game. The early G-Unit tapes were basically like albums, but they had freestyles, original songs, and songs where they would jack other artists' records and make them theirs. For instance, the Unit had a song called "After My Chedda" where they used the beat from LL Cool J's "Luv U Better." *They had their own flows and lyrics for the verses, but though they had their own words for the hook, they used the same melody from LL's chorus.*[2] (emphasis added).

48.     During the summer of 2003, Defendant Cartagena's songs appeared on the same record pool charts as the Copyrighted Work. For example, on the renowned S.U.R.E. NYC "WEEKLY E-MAIL PUBLICATION ALERTING THE MUSIC INDUSTRY TO THE MUSIC, NEWS & ISSUES THAT MADE AN IMPACT ON THE URBAN STREETS OF THE BIG APPLE OVER THE WEEKEND!" dated August 5, 2003, the Copyrighted Work was second on the list of twenty-five on the "Top Upward $lizzer$ (Prime Movers)" chart, while Defendant

---

[1] Joseph Cartagena & Shaheem Reid, *The Book of Jose: A Memoir* 165 (2022).
[2] *Id.* at 166-167.

KELLY|DORSEY, P.C.

10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 • Fax: (443) 542-0069
www.kellydorseylaw.com

Cartagena's (with "P. Diddy") song "Girl I'm A Bad Boy" appeared as number fifteen on the list of twenty-five on the "Top Upward $lizzer$ (Prime Movers)" chart.

49.     The Copyrighted Work was "hot in the streets" for most of 2003 as it was widely played among disc jockeys in the Rap and Hip Hop genre of music in New York, Philadelphia, and other cities on the East Coast.

50.     Defendants, and each of them, have continuously and repeatedly infringed, and are presently infringing, Plaintiff's Copyrighted Work by performing, broadcasting, streaming, marketing, selling, licensing, and otherwise exploiting and monetizing the songs, and unauthorized derivative works, entitled "Lean Back" (the "**Cartagena Infringing Work**") and "Candy Shop" (the "**Jackson Infringing Work**").

## Defendant Cartagena and Defendant Storch Copy the Copyrighted Work in Creating the Unauthorized Derivative Work Entitled "Lean Back"

51.     In public interviews, Defendant Cartagena has claimed he and Defendant Storch created the Cartagena Infringing Work when Defendant Cartagena hummed its melody while in a music studio and Defendant Storch played instrumentality associated with its melody. Defendant Storch claims he completed the core of the Cartagena Infringing Work in a matter of twelve (12) minutes and its musical introduction in three (3) minutes – all during a single session with Defendant Cartagena in a music studio. Defendant Mackie contributed to the final music and lyrics of the Cartagena Infringing Work.

52.     In reality, Defendant Cartagena, Defendant Mackie, and Defendant Storch copied substantial qualitative and quantitative portions of the sound recording and/or musical composition of the Copyrighted Work, including constituent elements that are original. Plaintiff incorporates herein by reference Plaintiff's sound recording and composition of the Copyrighted Work and the sound recording of the Cartagena Infringing Work.

KELLY|DORSEY, P.C.
10320 Little Patuxent Pkwy., Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

53.     The Cartagena Infringing Work is substantially similar to the Copyrighted Work. The substantial similarities between the Cartagena Infringing Work and the Copyrighted Work include, but are not limited to the following:

- The principal melodic line of both songs exhibit several striking similarities.

- The principal melodic figures in both songs begin on the same syncopated beat, that is, on the second half of beat 2 of the first entrance of the melody.

- The melodies of both songs are based upon a scale used in Middle Eastern and Greek music called the Locrian Mode, which is quite exotic and unlikely to appear in a pop music context. The Copyrighted Work is set in the Locrian Mode on C minor, the Cartagena Infringing Work is in the Locrian Mode on A♭ ("A-flat") minor.

- The percussion parts of both songs contain similar rhythms and use similar percussion effects.

- The tempos of both songs are identical: Quarter note = 100.

- Both pieces employ a similar ornamental gesture in the melodies. In the Copyrighted Work the gesture takes the form of a trill (a rapid and repeated alternation between two notes), while in the Cartagena Infringing Work the trill is notated as a 16th note triplet.

- The tone settings on the synthesizers in both songs are very similar.

- Both pieces feature a strong percussive hit on a minor triadic chord on the downbeat of every few bars. The chord is the primary chord in the key, in this case, the key of F# ("F-sharp") minor.

54.     The transcriptions below, in which both songs are transposed to the key of F# minor, show that the Copyrighted Work and the Cartagena Infringing Work are substantially similar:

**The Copyrighted Work:**

*whachacom4*

① *Quarter note = 100*



KELLY|DORSEY, P.C.

10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

**The Cartagena Infringing Work:**



55.     The similarities between the Copyrighted Work and the Cartagena Infringing Work

that appear in the transcriptions of each song are described below:

| Circle Reference | Description of Substantial Similarity Between the Copyrighted Work and "Lean Back" |
|---|---|
| 1 | The tempo is: Quarter note = 100. |
| 2 | The downbeat of every few bars is punctuated with a strong hit on the tonic chord of the parent key, in this case F# minor. |
| 3 | After the chord, the melody begins on beat number **two** in the measure and is marked by a rest (silence). |
| 4 | The first melodic figure in the song is played by two 16th notes on the **second half of beat number 2**. |
| 5 | In the Copyrighted Work, beat **three** of the measure contains two 8th notes on the pitches: D and C#, which are the 6th and 5th scale steps in the key of F# minor. The gesture is then repeated on beat **four**. In the Cartagena Infringing Work, beats **three** and **four** of the measure contains two 16th notes on the pitches: D and C#, |

| Circle Reference | Description of Substantial Similarity Between the Copyrighted Work and "Lean Back" |
|---|---|
|  | which are the 6th and 5th scale steps in the key of F# minor. This is a variation on the gesture found in the same place in the Copyrighted Work, the difference being that D and C# are separated by the note E, forming an ornamental figure known as a 16th note triplet. However, the melodic effect is the same. As in the Copyrighted Work, this gesture is then repeated on **beat 4**. |
| 6 | In the Copyrighted Work, the **fourth** beat of the following measure contains a trill or rapid alternation between two notes, in this case: F# and G natural, the tonic (first tone) and second tone, respectively, of the Locrian Mode on F#. The 16th note triplet in the Cartagena Infringing Work is reminiscent of the trilled figure in the Copyrighted Work, which adds to the Middle Eastern flavor of both songs. |
| 7 | The percussion track, which consists of a bass drum, below, and hand claps above, features multiple syncopated figures with the emphasis on beats 1 and 2. |

56.    The Cartagena Infringing Work is extrinsically and intrinsically similar to the Copyrighted Work.

KELLY | DORSEY, P.C.

10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

57.     Waveform images reflecting the Copyrighted Work and the Cartagena Infringing Work are set forth below and reflect that the Copyrighted Work and the Cartagena Infringing Work are substantially similar:



58.     Defendant Cartagena, Defendant Mackie, Defendant Storch, Defendant Warner/Chappell Music, Defendant Warner-Tamerlane Publishing, Defendant TVT Music, Defendant Terror Squad Productions, Defendant Terror Squad Entertainment, Defendant Joey and Ryan Music, and Defendant Remynisce Music have published, reproduced, publicly displayed, distributed, performed, monetized, sold, or otherwise profited from the Cartagena Infringing Work, or caused to be published, reproduced, publicly displayed, distributed, performed, monetized, sold, or otherwise profited from the Cartagena Infringing Work. As of 2023, Defendant Cartagena, Defendant Mackie, Defendant Storch, Defendant Warner/Chappell Music, Defendant Warner-Tamerlane Publishing, Defendant TVT Music, Defendant Terror Squad Productions, Defendant Terror Squad Entertainment, Defendant Joey and Ryan Music, and Defendant Remynisce Music continue to publish, reproduce, publicly display, distribute, perform, monetize,

21

sell, or otherwise profit from the Cartagena Infringing Work via new sales, new downloads, and new performances of the Cartagena Infringing Work.

**Defendant Jackson and Defendant Storch Copy the Copyrighted Work in Creating the Unauthorized Derivative Work Entitled "Candy Shop"**

59.     Expanding on the commercial success of the Cartagena Infringing Work, on information and belief, Defendant Cartagena claims he co-produced with Defendant Storch the Jackson Infringing Work by, among other things, first singing the song's introduction, then having Defendant Storch create instrumentation associated with its melody, and collectively putting the sounds together.

60.     Once the Jackson Infringing Work was complete, according to Defendant Cartagena: "I figured at the time [the Cartagena Infringing Work] was popping so [Defendant Storch] called me like 50 times, 100 times: 'Yo, you sure you don't want to use it? [Defendant Jackson] called me. [Defendant Jackson] want it . . . I never had a problem with this dude. I was like, 'Go ahead.' The next day, I get in there and hear 'Candy Shop' . . . Sometimes you know beats ain't for you."

61.     Defendant Cartagena and Defendant Storch misappropriated compositional and structural musical elements that exist in the Copyrighted Work when co-producing the Jackson Copyrighted Work.

62.     The Jackson Infringing Work is substantially similar to the Copyrighted Work. The substantial similarities between the Jackson Infringing Work and the Copyrighted Work include, but are not limited to the following:

- The principal melodic line of both songs exhibit several striking similarities.

- The principal melodic figures in both songs beginning on the same syncopated beat, that is, on the second half of beat 2 of the first entrance of the melody.

22

KELLY|DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

- The melodies of both songs are based upon a scale used in Middle Eastern and Greek music called the Locrian Mode, which is quite exotic and unlikely to appear in a pop music context. The Copyrighted Work is set in the Locrian Mode on C minor, the Jackson Infringing Work is in the Locrian Mode on Ab minor.

- The percussion parts of both songs contain similar rhythms and use similar percussion effects.

- The tempos of both songs are identical: Quarter note = 100.

- Articulation of the melody – Both pieces employ a similar ornamental gesture in the melodies. In the Copyrighted Work the gesture takes the form of a trill (a rapid and repeated alternation between two notes), while in the Jackson Infringing Work the trill is notated as a 16th note triplet.

- The tone settings on the synthesizers in both songs are very similar.

- Both pieces feature a strong percussive hit on a minor triadic chord on the downbeat of every few bars. The chord is the primary chord in the key, in this case, the key of F# minor.

63.     The transcriptions below, in which both songs are transposed to the key of F# minor, show that the Copyrighted Work and the Jackson Infringing Work are substantially similar:

23

**The Copyrighted Work:**

*whachacom4*

① *Quarter note = 100*



KELLY|DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

**The Jackson Infringing Work:**





KELLY │ DORSEY, P.C.

10320 Little Patuxent Pkwy., Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

25

64.     The similarities between the Copyrighted Work and the Jackson Infringing Work that appear in the transcriptions of each song is described below:

| Circle Reference | Description of Substantial Similarity Between the Copyrighted Work and "Candy Shop" |
|---|---|
| 1 | The tempo is: Quarter note = 100. |
| 2 | The downbeat of every few bars is punctuated with a strong hit on the tonic chord of the parent key, in this case F# minor. |
| 3 | After the chord, the melody begins on beat number **two** in the measure and is marked by a rest (silence). |
| 4 | The first melodic figure in the song is played by two 16th notes on the **second half of beat number 2**. |
| 5 | In the Copyrighted Work, beat **three** of the measure contains two 8th notes on the pitches: D and C#, which are the 6th and 5th scale steps in the key of F# minor. The gesture is then repeated on beat **four**. In the Jackson Infringing Work, beats **three** and **four** of the measure contains two 16th notes on the pitches: D and C#, which are the 6th and 5th scale steps in the key of F# minor. This is a variation on the gesture found in the same place in the Copyrighted Work, the difference being that D and C# are separated by the note E, forming an ornamental figure known as a 16th note triplet. However, the melodic effect is the same. As in the Copyrighted Work, this gesture is then repeated on **beat 4**. |
| 7 | The percussion track, which consists of a bass drum, below, and hand claps above, features multiple syncopated figures with the emphasis on beats 1 and 2. |

65.     The Jackson Infringing Work is extrinsically and intrinsically similar to the Copyrighted Work.

66.     Defendant Jackson, Defendant Storch, Defendant TVT Music, Defendant Shady Records, Defendant Interscope Records, Defendant Aftermath Records, and 50 Cent Music, LLC, have published, reproduced, publicly displayed, distributed, performed, monetized, sold, or otherwise profited from the Jackson Infringing Work, or caused to be published, reproduced, publicly displayed, distributed, performed, monetized, sold, or otherwise profited from the Jackson

KELLY|DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

Infringing Work. As of 2023, Defendant Jackson, Defendant Storch, Defendant TVT Music, Defendant Shady Records, Defendant Interscope Records, Defendant Aftermath Records, and 50 Cent Music, LLC continue to publish, reproduce, publicly display, distribute, perform, monetize, sell, or otherwise profit from the Jackson Infringing Work via, *inter alia*, new sales, new downloads, and new performances of the Jackson Infringing Work.

**Defendants Commercially Exploit the Cartagena Infringing Work and Jackson Infringing Work Without Plaintiff's Authorization or Consent and Without any Compensation to Plaintiff**

67.     Defendants' use of portions of the Copyrighted Work is without Plaintiff's authorization, consent, or knowledge, and without any compensation to Plaintiff.

68.     Since Defendants began exploiting the Copyrighted Work, they have made millions of dollars in revenue from their monetization of the Copyrighted Work through the Cartagena Infringing Work and the Jackson Infringing Work.

69.     Defendants have exploited the Copyrighted Work by causing recordings of the Cartagena Infringing Work to be widely sold, such that the Cartagena Infringing Work was certified "gold" by the Recording Industry Association of America ("RIAA"), meaning five hundred thousand (500,000) copies of the Cartagena Infringing Work were sold within a year of the song's release in 2004. This exploitation has continued since Defendants released the Cartagena Infringing Work in 2004 to the present, through ongoing sales, promotions, performances, downloads, and licenses of the Cartagena Infringing Work

70.     Defendants have also exploited the Copyrighted Work by causing the Cartagena Infringing Work to be played on radio stations, both in the Mid-Atlantic area and nationwide. The Cartagena Infringing Work was number one on the Billboard Top 100 Chart for three weeks, meaning it was the most-widely played over the radio and best-selling song in America for those

KELLY DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

three weeks. The Cartagena Infringing Work was in the tenth position on the year-end Billboard Top 100 Chart for 2004, meaning it was the tenth most-played and best-selling song of 2004. The Cartagena Infringing Work continues to sell copies and receives occasional radio play in this District in 2023.

71. Defendants have also exploited the Copyrighted Work by performing or causing the Cartagena Infringing Work to be performed by Defendants Cartagena and Mackie in the area. By way of example and not limitation, in 2007 and 2017, Defendant Cartagena performed the Cartagena Infringing Work at Royal Farms Arena in Baltimore, Maryland. On information and belief, Defendant Cartagena and Defendant Mackie have also performed the song numerous times at venues outside this District but within the Mid-Atlantic area from 2004 to the present. Defendants have further exploited the Copyrighted Work by performing the Cartagena Infringing Work across the world, since 2004 and continuing to the present day.

72. Defendants have exploited the Copyrighted Work by causing recordings of the Jackson Infringing Work to be widely sold, such that the Jackson Infringing Work was certified "platinum" by the RIAA, which means one million (1,000,000) copies of the recording were shipped to retailers for sale, within a year of the song's release in 2005. The Jackson Infringing Work has since been certified as "5x platinum" by the RIAA for sales of 5 million copies between the song's release in 2005 and January 19, 2023. The Jackson Infringing Work was also played by many radio stations at the height of its popularity, both inside this District and worldwide. It spent one week at the "number one" position on the Billboard Hot 100 list, which at the time measured a song's popularity based on recording sales and radio play. It is number 377 on the Billboard "all time" chart, meaning that it is the 377th best-selling and most-played song of all time. This exploitation has continued since Defendants released the Jackson Infringing Work in 2005 to the

28

present, through ongoing sales, promotions, performances, downloads, and licenses of the Jackson Infringing Work. The Jackson Infringing Work continues to sell copies and receives occasional radio play in this District in 2023.

73.     Defendants have also exploited the Copyrighted Work by performing or causing the song to be performed by Defendant Jackson in this area. By way of example and not limitation, in 2009, Defendant Jackson performed the Jackson Infringing Work at Merriweather Post Pavilion in Columbia, Maryland, in 2014 and 2015, Defendant Jackson performed the Jackson Infringing Work at the Fillmore in Silver Spring, Maryland, and in 2017, Defendant Jackson performed the Jackson Infringing Work at Royal Farms Arena in Baltimore, Maryland. On information and belief, Defendant Jackson has also performed the song numerous times at venues outside this District but within the Mid-Atlantic Area from 2005 to the present. Defendants have further exploited the Copyrighted Work by performing the Jackson Infringing Work across the world, since 2005 and continuing to the present day.

74.     On information and belief, Defendants' identical copying and exploitation of portions of the Copyrighted Work was willful, and in disregard of, and with indifference to, the rights of Plaintiff. On further information and belief, Defendants' intentional, infringing conduct was undertaken to reap the creative benefit and value associated with the Copyrighted Work.

75.     By failing to obtain Plaintiff's authorization to use the Copyrighted Work or to compensate Plaintiff for the use, Defendants have avoided payment of license fees, royalties, and other financial costs associated with obtaining permission to exploit the Copyrighted Work, as well as the restrictions that Plaintiff is entitled to and would place on any such exploitation as conditions for Plaintiff's permission, including the right to deny permission altogether.

KELLY DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

76.     As a result of Defendants' actions described above, Plaintiff has been directly damaged, and continues to be damaged, by the unauthorized reproduction, publication, distribution, performance, monetization, and sale of portions of the Copyrighted Work through the Cartagena Infringing Work and the Jackson Infringing Work. Defendants have never accounted to or otherwise paid Plaintiff for their use of these portions of the Copyrighted Work.

77.     Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

**COUNT I**
**Copyright Infringement – Cartagena Infringing Work**
**(17 U.S.C. § 501)**
**(Plaintiff v. Defendants Cartagena, Mackie, Storch, Warner-Tamerlane Publishing Corp., Warner/Chappell Music, Inc., Joey and Ryan Music, Terror Squad Productions, Inc., Terror Squad Entertainment, Remynisce Music, and TVT Music, Inc.)**

78.     Plaintiff repeats and re-alleges the foregoing paragraphs hereof, as if fully set forth herein.

79.     The Copyrighted Work is an original musical composition containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq*. Plaintiff is the joint owner of rights under copyright in and to the Copyrighted Work. Plaintiff owns copyright registrations for the Copyrighted Work issued by the United States Copyright Office, attached as Exhibits 1 and 2.

80.     The Cartagena Infringing Work is substantially similar to the music of the Copyrighted Work. Defendant Cartagena and Defendant Storch had a reasonable possibility of access to the Copyrighted Work prior to creating the Cartagena Infringing Work.

81.     Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, public performance, and sale of portions of the Copyrighted Work without Plaintiff's permission via the Cartagena Infringing Work, Defendants have directly infringed Plaintiff's rights

KELLY DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501. On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Work, and has enabled Defendants illegally to obtain profit therefrom via the Cartagena Infringing Work.

82.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' revenue attributable to Defendant's infringing conduct alleged herein, including from any and all performances and sales of the Cartagena Infringing Work, and an accounting of and a constructive trust with respect to such revenue.

83.     Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

84.     As a direct and proximate result of the Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendants will continue to infringe the Copyrighted Work. Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

WHEREFORE, Plaintiff requests judgment against Defendants as stated fully below.

## COUNT II
### Copyright Infringement – Jackson Infringing Work
### (17 U.S.C. § 501)
### (Plaintiff v. Defendants Cartagena, Storch, Jackson, Shady Records, Interscope Records, Aftermath Records, 50 Cent Music, LLC, and TVT Music, Inc.)

85.     Plaintiff repeats and re-alleges the foregoing paragraphs hereof, as if fully set forth herein.

86.     The Copyrighted Work is an original musical composition containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq*. Plaintiff is the joint owner of rights under copyright in and to the Copyrighted Work. Plaintiff owns copyright registrations for the Copyrighted Work issued by the United States Copyright Office, attached as Exhibits 1 and 2.

87.     The Jackson Infringing Work is substantially similar to the music of the Copyrighted Work. Defendant Cartagena and Defendant Storch had a reasonable possibility of access to the Copyrighted Work prior to creating the Jackson Infringing Work.

88.     Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, public performance, and sale of portions of the Copyrighted Work without Plaintiff's permission via the Jackson Infringing Work, Defendants have directly infringed Plaintiff's rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

89.     On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Work, and has enabled Defendants illegally to obtain profit therefrom via the Jackson Infringing Work.

90.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' revenue attributable to

KELLY DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

Defendant's infringing conduct alleged herein, including from any and all performances and sales of the Jackson Infringing Work, and an accounting of and a constructive trust with respect to such revenue.

91.     Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

92.     As a direct and proximate result of the Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendants will continue to infringe the Copyrighted Work. Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

WHEREFORE, Plaintiff requests judgment against Defendants as stated fully below.

KELLY | DORSEY, P.C.

10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

## COUNT III
## Unjust Enrichment
## (Plaintiff v. All Defendants)

93.     By exploiting the Copyrighted Work to create the Cartagena Infringing Work and the Jackson Infringing Work, Defendants obtained a benefit from Plaintiff, in that, without the Copyrighted Work, neither of the Infringing Works would exist.

94.     Defendants Cartagena and Storch knew that they were taking Plaintiff's Copyrighted Work for their own use in violation of the Copyright Act. Defendants Cartagena and Storch obtained the Copyrighted Work through a record or radio pool, knew it was not theirs, and knew that another artist had created it. They also knew, as experienced musicians, that they had an obligation to obtain that other artist's permission before using a portion of that work as their own.

95.     All Defendants recklessly disregarded the existence of the Copyrighted Work in creating, producing, and marketing the Infringing Works. All Defendants are sophisticated participants in the commercial music industry, who knew that there was a possibility that the music underlying hip hop compositions may be "sampled" or otherwise made using existing compositions by other artists, because that has been characteristic of hip hop and rap music since the inception of the genres.

96.     All Defendants failed to take any reasonable measure to ensure that the Cartagena Infringing Work and the Jackson Infringing Work were not, in the tradition of hip hop music, using pre-existing compositions in violation of those compositions' copyright.

97.     Defendants have made millions of dollars from their exploitation of the Copyrighted Work, including profits from the sale of both the albums containing the Infringing Works and the sale of the Infringing Works themselves, as well as profits from ticket and collateral merchandise sales from performance of the Infringing Works.

KELLY DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

98.     It would be unjust for Defendants to retain the profit made via exploitation of the Copyrighted Work without compensating Plaintiff according to industry expectations and standards, where the profits were made through violations of the Copyright Act and in contravention of industry standards for recognizing and compensating songwriters.

WHEREFORE, Plaintiff requests judgment against Defendants as fully stated below.

## COUNT IV
### Request for Accounting
### (Plaintiff v. All Defendants)

99.     Plaintiff incorporates by reference all previous paragraphs as though fully stated herein.

100.    Defendants owe a duty to Plaintiff to render an accounting of Defendants' revenues and profits attributable to Defendants' infringing conduct, including Defendants' profits from sales, performances, licensing, and any other exploitation of the Copyrighted Work through the Infringing Works, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work

101.    As creator and holder of the copyright in the Copyrighted Work, Plaintiff is entitled to such accounting.

WHEREFORE, Plaintiff requests judgment against Defendants as set forth fully below.

## PRAYERS FOR RELIEF

1.      A declaration that Defendants have violated Section 501 of the Copyright Act (17 U.S.C. § 501).

2.      That Defendants have been unjustly enriched through their exploitation of the Copyrighted Work.

3.      Granting an injunction preliminarily and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

a.      publishing, distributing, marketing, advertising, promoting, performing, or selling or authorizing any third party to publish, distribute, market, advertise, promote,  perform, or sell the Copyrighted Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work, including the Cartagena Infringing Work and the Jackson Infringing Work; and

b.      aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraph (a).

4.      That Defendants be ordered to provide an accounting of Defendants' revenues and profits attributable to Defendants' infringing conduct, including Defendants' profits from sales, performances, licensing, and any other exploitation of the Copyrighted Work through the Infringing Works, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work.

5.      That Defendants be ordered to compensate Plaintiff, in perpetuity, for any future sales, performances, promotions, licensing agreements, royalties, and any other future uses of the Infringing Works generating revenue for Defendants, in an amount calculated according to industry fair standards and practices for compensating songwriters.

6.      That Defendants, at their own expense, be ordered to credit Plaintiff as a songwriter of the Infringing Works for all future sales, performances, promotions, licensing agreements,

"plays," and any other future uses of the Infringing Works generating revenue for Defendants or which would, under industry standards, normally include credit to the songwriter.

    7.    Awarding Plaintiff:

        a.    A percentage of Defendants' revenue obtained as a result of Defendants' infringing conduct, including but not limited to all profits from sales of the Cartagena Infringing Work and the Jackson Infringing Work, and other exploitation of the Copyrighted Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work, or in the Court's discretion, such amount as the Court finds to be just and proper;

        b.    Compensatory damages sustained by Plaintiff as a result of Defendants' infringing conduct, in an amount to be proven at trial; and

        c.    Plaintiff's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

    8.    Awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums.

    9.    Awarding such other and further relief as the Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues so triable.

KELLY | DORSEY, P.C.
10320 Little Patuxent Pkwy, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750 · Fax: (443) 542-0069
www.kellydorseylaw.com

Dated:   April 27, 2023                    Respectfully submitted,

                                           KELLY DORSEY, P.C.

                                           */s/ Gregory A. Dorsey*
                                           Gregory A. Dorsey (USDC MD Bar No. 25218)
                                           Kendra M. Leite (USDC MD Bar No. 22111)
                                           Megan E. Lensink (USDC MD Bar No. 21924)
                                           10320 Little Patuxent Parkway
                                           Suite 608
                                           Columbia, Maryland 21044
                                           Tel.: (410) 740-8750
                                           Fax: (443) 542-0069
                                           gdorsey@kellydorseylaw.com
                                           kleite@kellydorseylaw.com
                                           mlensink@kellydorseylaw.com

                                           *Attorneys for David W. Smith, II*

38